UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: _11/30/2016_
```

MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK, MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUITY FUND,
TRAINING FUND, HEALTH AND SAFETY
FUND, and JOHN VIRGA,

**OPINION AND ORDER**

14 Civ. 6016 (ER)

                              Plaintiffs,

                  - against -

PHASE CONSTRUCTION SERVICES, INC.,
and SL CONSTRUCTION GROUP, INC.,

                              Defendants.

Ramos, D.J.:

   Mason Tenders District Council of Greater New York (the "Union"), Mason Tenders

District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, Health and Safety

Fund (together, the "Funds") and John Virga (all together, "Plaintiffs") bring this action against

Defendants Phase Construction Services, Inc. and SL Construction Group, Inc. alleging breach

of contract and violations of the Taft-Hartley Act, and the Employment Retirement Income

Security Act of 1974 ("ERISA").  Before the Court are Plaintiffs' motion to amend the

Complaint to include Salvatore LaBarca and Phase NY as defendants, and Plaintiffs' motion to

compel discovery.

   For the reasons stated below, Plaintiffs' motions are GRANTED.

## I.   <u>Factual[1] and Procedural Background</u>

The Funds are labor-management trust funds established and maintained pursuant to various collective bargaining agreements ("CBA").  Complaint ("Compl.") (Doc. 1) ¶ 5. Pursuant to a CBA, employers contribute to the Funds, which in turn provide fringe benefits to employees.  *Id.*  Defendants SL Construction Group, Inc. ("SL") and Phase Construction Services, Inc. ("Phase") perform construction services in the greater New York area and maintain an office at 55 West 39th Street (the "39th Street office").  *Id.* at ¶¶ 8, 10, 12.  Salvatore LaBarca is the president and chief executive officer of both Defendants.  *Id.* at ¶¶ 9, 11.  On November 8, 2005, the Union and SL entered into a CBA requiring SL to, among other things, remit "fringe benefit contributions" to the Funds and submit "dues checkoffs" and Political Action Committee contributions to the Union based on the number of hours of work performed by its Union employees.  *Id.* at ¶ 14.  The CBA also gave the Funds the right to audit SL's books and records to determine if it was remitting the proper amount of fringe benefit contributions.  *Id.* at ¶ 15.  On August 1, 2014, Plaintiffs filed the instant action alleging, among other things, breach of the CBA.  Plaintiffs brought suit against both SL and Phase claiming that they were "commonly owned and operated" and that Phase is jointly and severally liable because the corporations maintained "integrated operations" such that they are "alter egos and/or a single employer."  *Id.* at ¶ 13.

---

[1] The following factual background is based on allegations in the Complaint, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Plaintiffs have also submitted several exhibits with their motion, *see* Doc. 71, of which the Court may take judicial notice, because they are documents filed in court.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)  ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Within the first two months, the parties stipulated to three extensions for Defendants to submit an answer or otherwise respond.  (Docs. 7-9)  As a result, the Court directed Defendants to respond by October 6, 2014.  Defendants filed an Answer on October 7, 2014.  (Doc. 10)  On December 10, 2014, the parties agreed to a Discovery Plan and Scheduling Order, providing, in pertinent part, that joinder of additional parties and any amendment to pleadings were to be filed by January 10, 2015; and that all discovery was to be completed by July 19, 2015.[2]  (Doc. 12)

Pursuant to the discovery schedule, Plaintiffs served Defendants with interrogatories and documents requests.  Rex Whitehorn, Defendants' counsel, advised Deke Bond, Plaintiffs' counsel, that all of Defendants' business records, including documents responsive to Plaintiffs' requests, were located in Defendants' warehouse in Deer Park, New York.  Memorandum of Law in Support of Plaintiffs' Motion to Compel and For Sanctions ("Pl. Compel Memo") (Doc. 73), Ex. I (Affirmation of Deke Bond).  On May 8, 2015, Bond went to the warehouse to inspect the documents and found "scores of boxes, each labeled with a company name and a year designation."  *Id.*  Bond noted that the latest date appearing on the boxes that had Defendants' name on the label (or some derivation thereof) was 2013.  *Id.*  On July 10, 2015, the parties requested an extension to complete discovery.  The Court granted the request extending the discovery deadline until October 1, 2015.  (Docs. 13, 14)

LaBarca's deposition was held on October 1, 2015, the last day of discovery.  In response to a question regarding the location of post-2013 SL and Phase documents, LaBarca testified that because he had various bookkeepers, his records were not "that good" and that he had yet to file taxes for 2014.  Nevertheless, LaBarca made assurances that his accountants were working on

---

[2] No deadline was set for the filing of any supplemental pleadings.

filing taxes for 2014 and that the underlying documents were "somewhere."  Pl. Compel Memo. Ex. M (LaBarca Deposition 47:18-25).  LaBarca also identified additional individuals who possibly possessed relevant information, including Patricia LaBarca-Burton, LaBarca's sister, and Patricia Dima, his accountant.  At the status conference held on October 8, 2015, Plaintiffs' counsel informed the Court about LaBarca's deposition and requested an extension of the discovery deadline to depose the identified individuals and allow Defendants to produce documents from areas other than the warehouse.[3]  Defendants' counsel joined in the extension request, stating that it, too, had additional individuals to depose and documents to produce. Consequently, the Court granted the parties a sixty-day extension to complete discovery until December 8, 2015.

Following the conference, on October 22, 2015, Plaintiffs sent a letter to Defendants highlighting LaBarca's testimony about additional documents not stored in the warehouse, and requested that they "produce copies of all relevant, responsive documents from those locations that have not yet been searched."  Pl. Compel. Memo. Ex. N.  Plaintiffs also requested that Defendants comply with Plaintiffs' demand for an audit of Defendants' books and records for the time period after December 29, 2013, the end date for the period of the last audit.  Plaintiffs added that they would seek Court intervention "if needed."  *Id.*

On November 18, 2015, Plaintiffs requested leave to file a motion to compel discovery, claiming that Defendants had refused to make their books and records available for inspection

---

[3] At the status conference, Whitehorn explicitly acknowledged that LaBarca's deposition revealed new individuals and potential documents.  He stated "in addition to providing [the documents from the warehouse], [LaBarca's] deposition did reveal additional sources of information that we left some blanks open and the deposition transcript for us to produce and we are going to follow up immediately."  Transcript of Oct. 8, 2015 Status Conference (Doc. 15) 4:17-20.

and audit by Plaintiffs and refused to produce documents located outside of the warehouse. (Doc. 17)  On December 9, 2015, the Court held a status conference at which Defendants' counsel represented that the 39th Street office had closed and that all the documents that had been stored in the office had been moved to the warehouse in Deer Park.  Transcript of Dec. 9, 2015 Status Conference (Doc. 23) 10:7:17.  The Court then directed the parties to file a joint case management plan by December 15, with all discovery to be completed no later than February 9, 2016.[4]  The Court also reserved judgment on the issue of the audit.  One day after the deadline, on December 16, the parties filed a joint motion for an extension to file the case management plan until December 23, 2015, which the Court granted.  (Docs. 21, 22)

On December 23, 2015, Plaintiffs informed the Court that the parties were unable to reach an agreement with respect to the case management plan and filed their own discovery plan.[5]  (Doc. 25)  They also apprised the Court of the conduct by Defendants' counsel that they claimed "impeded the progress" of a joint discovery plan, including the refusal to produce certain documents or to respond to Plaintiffs' request for depositions, and asked the Court to order Defendants' counsel to cooperate in arranging the depositions.  *Id.*  That same day, Defendants filed their proposed discovery plan agreeing to, in pertinent part, "produce all documents concerning SL and/or Phase which were not in the Deer Park warehouse at the time of Mr. Bond's visit that are within Defendants' custody, possession or control on or before January 25, 2016."  (Doc. 26)  Five days later, on December 28, 2015, the Court adopted Plaintiffs' proposed discovery plan and ordered Defendants to make the previously identified

---

[4] Prior to the status conference, on December 3, 2015, Barbara Mehlsack filed a notice of appearance on behalf of Plaintiffs.  (Doc. 19)

[5] The Scheduling Order filed by Plaintiffs did not change the January 10, 2015 deadlines for filing amended pleadings or joining additional parties.  *See* Scheduling Order (Doc. 25, Ex. 2).

parties available for depositions ("Dec. 28 Discovery Order").[6]  (Doc. 27)  On December 29,

2015, Defendants filed a letter objecting to the Dec. 28 Discovery Order, claiming that Plaintiffs'

discovery submission was not a "joint submission" and that Defendants were not provided an

opportunity to respond to the relief sought by Plaintiffs.  (Doc. 29)  In response, on December

30, the Court denied Defendants' request to withdraw the Dec. 28 Discovery Order ("Dec. 30

Order") and directed them to file a letter listing the specific document requests to which they

objected.  (Doc. 30)

On January 8, 2016, Defendants filed their objections to Plaintiffs' discovery requests,

claiming, among other things, that the requests were overly broad and vague or sought

confidential information.  (Doc. 33)  Less than one week later, on January 14, 2016, Plaintiffs'

counsel, Mehlsack, filed an emergency letter motion to extend the time for discovery to March 9,

2016, informing the Court that she had suffered major injuries as a result of a ski accident.  (Doc.

34)  Mehlsack also requested that the Court order Defendants to produce witnesses, including

Dima, for depositions and impose sanctions on Defendants for failure to comply with the Court's

Dec. 30 Order, including requiring Defendants to pay attorneys' fees.  *Id.*  Though Defendants

opposed Plaintiffs' motion (Doc. 35), on January 27, 2016, the Court granted the extension to

March 9, 2016 and ordered Defendants to produce the parties for deposition (Doc. 36).  The

Court also denied Defendants' objections to Plaintiffs' discovery requests (Docs. 40, 49)[7] and

---

[6] The Dec. 28 Discovery Order provided, in part, that Defendants consented to the deposition of Dima and the
production of responsive documents prior to her deposition.  Dima had previously informed Plaintiffs that she would
not produce documents without the consent of Defendants.  Consequently, Plaintiffs sought confirmation from
Defendants' counsel that Defendants consented to Dima's production of certain documents and that she had been
given notice of Plaintiffs' request for a deposition.

[7] In its January 27, 2016 Order, the Court directed the parties to further brief the issue of production of tax returns.
Plaintiffs' counsel requested three extensions to file a response to Defendants' motion due to complications as a

ordered that all discovery be completed by April 1, 2016, with depositions completed by March 18, 2016.  On March 16, 2016, the parties requested another extension to complete depositions until April 1, 2016, due to a deponent's family medical emergency.  (Doc. 51)  The Court granted the request and ordered that all discovery be completed by April 11, 2016.  (Doc. 52)  Dima's deposition was held on March 31, 2016.  Defendants' counsel did not attend the deposition.

On April 13, 2106, Plaintiffs sent a letter to Defendants claiming that they had not complied with their discovery obligations and listed the document requests that were still outstanding.  Pl. Compel Memo Ex. F.  The next day, at the April 14, 2016 status conference, Mehlsack informed the Court that Plaintiffs had received only "a few assorted" documents from Defendants dated after December 30, 2013, not including documents received from Dima.  Transcript of Apr. 14, 2016 Status Conference (Doc. 53) 2:8-18.  Mehlsack also requested leave to file a motion to amend the Complaint to include LaBarca as a defendant, explaining that Defendants' tax returns showed that LaBarca borrowed significant amounts of money from Defendants and that no loan agreements were produced.  Mehlsack again requested that the Court impose a sanction – this time, an order precluding Defendants from offering any documents that had not been produced as of that date as evidence – due to Defendants' refusal to produce relevant documents post December 2013.  *Id.* at 4:19-5:9.  Mehlsack further noted that Defendants had not submitted a statement claiming either that the documents requested did not exist or that they had already been produced.  *Id.* at 5:10-15.  Lastly, Mehlsack informed the Court of a new corporation created by LaBarca, Phase NY, which she claimed could potentially

result of the accident Plaintiffs' counsel suffered and confusion regarding the date the submissions were due.  (Docs. 43, 47, 51)  The Court granted all three extensions.

be liable to Plaintiffs because of LaBarca's alleged improper borrowing of money from Defendants. *Id.* at 7:2-8:9.  In response, Whitehorn explained that at the deposition, LaBarca stated that he had closed the 39th Street office in August 2015 and that all of the documents in that office were sent to the warehouse in Deer Park. *Id.* at 12:12-16.  Whitehorn made no mention of Phase NY's potential involvement in the instant action.

The Court granted Plaintiffs' request for leave to file the instant motion to amend the Complaint to name LaBarca as a defendant and directed Plaintiffs to file the motion by May 27, 2016.  The Court also ordered Defendants to respond to Plaintiffs' letter regarding outstanding discovery by April 22, 2016 and suggested that Defendants submit a statement that no additional documents existed, if in fact Defendants found that to be the case.[8]  The next day, on April 15, Plaintiffs sent Defendants a letter requesting relevant documents regarding Phase NY, claiming that Phase NY should be "automatically" covered by the Complaint.  Pl. Compel Memo. Ex. J. Defendants responded to Plaintiffs letter on April 26, 2016, claiming that Defendants had indeed complied with their discovery obligations and attached an affidavit from LaBarca.  *Id.* at Ex. E. In the affidavit, LaBarca claimed that he had "searched [his] records for any additional responsive documents [he] understood that were being demanded and none exist."  *Id.*

On May 12, 2016, Plaintiffs requested leave to supplement the Complaint to name Phase NY as a defendant.[9]  (Doc. 58)  Four days later, on May 16, 2016, Plaintiffs sent a letter to

---

[8] The Court specifically stated, "if [Defendants] make a determination that documents that are requested do not exist, just say that so that we don't keep coming back fighting about nonexistent documents.  Transcript of April 14, 2016 Status Conference 28:21-23.

[9] Plaintiffs seek to supplement the Complaint pursuant to Rule 15(d) as opposed to seeking to "amend" the Complaint because Phase NY was created *after* Plaintiffs filed the Complaint.  *See* Fed. R. Civ. P. 15(d) (allowing courts to grant motions for supplemental pleadings upon reasonable notice).

Defendants requesting a meet-and-confer to address the outstanding discovery disputes and claiming that LaBarca's affidavit was insufficient to satisfy Defendants' Rule 34(b)(2) obligation.  Pl. Compel Memo Ex. G.  On May 20, 2016, Defendants responded, acknowledging that it was an attempt at a meet-and-confer request, but stated that "meeting and conferring to discuss the unreasonable allegations, insinuations and accusations made in [Plaintiffs'] letter would not be productive."  *Id.* at Ex. H.

The Court granted Plaintiffs' request to file a motion to supplement the Complaint to name Phase NY as a defendant on May 20, 2016, and directed Plaintiffs to include their application to add Phase NY to the instant motion to amend due on May 27, 2016.  (Doc. 61)  Plaintiffs timely filed the motion to amend to name LaBarca and Phase NY as defendants.  (Doc. 64)  In addition to asserting the claims alleged in the Complaint against LaBarca and Phase NY, Plaintiffs' proposed Amended Complaint also alleges new facts regarding the absence of arms-length dealing between both SL and Phase; and LaBarca's "complete domination" of Defendants for his personal purposes.  *See* Amended Complaint (Doc. 64, Ex. 1) at 13-14.  Plaintiffs also seek four new remedies including, (1) an order enjoining Defendants from using corporate funds for LaBarca's personal expenditures; (2) an order directing LaBarca to provide an accounting of his use of corporate funds for personal purposes; (3) an order enjoining LaBarca from disposing of any personal assets purchased or maintained with corporate funds; and (4) an order directing the creation of a constructive trust in the proceeds from LaBarca's disposition of personal assets purchased or maintained with corporate funds.  *Id.* at 43-45.

On June 28, 2016, Plaintiffs requested a pre-motion conference regarding Defendants' alleged discovery deficiencies and sought leave to file a motion to compel.  (Doc. 67)  After

further briefing, the Court granted leave on July 14, 2016 (Doc. 72) and Plaintiffs filed the instant motion to compel discovery on August 3, 2016 (Doc. 73).

## II.  Legal Standard

### A.  Leave To Amend

Federal Rule of Civil Procedure 15(a) provides that the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15.  "Generally, a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Holmes v. Grubman,* 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007)).  Where a plaintiff seeks to join parties to its civil suit, Federal Rule of Civil Procedure 21 "is the operative rule."  *Otegbade v. N.Y. City Admin. for Children Servs.*, No. 12 CIV. 6298 (KPF), 2015 WL 851631, at *2 (S.D.N.Y. Feb. 27, 2015).  Rule 21 permits the addition of any parties by order of the court "at any time, on just terms."  Fed. Civ. R. P. 21; *see also Momentum Luggage & Leisure Bags v. Jansport. Inc.*, No. 00 Civ. 7909 (DLC), 2001 WL 58000, at *1-2 (S.D.N.Y. Jan 23, 2001).  Because an answer has been filed here, the "showing necessary under Rule 21 is the same as that required under Rule 15(a)."  *Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, No. 07 Civ. 1178 (JGK) (FM), 2008 WL 781823, at *1 (S.D.N.Y. Mar. 20, 2008).

Where, as here, a scheduling order governs amendments to the complaint, the Second Circuit has held that the lenient standard under Rule 15(a) or Rule 21 must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.  *See Holmes,* 568 F.3d at 334; *Lawrence v. Starbucks Corp.,* No. 08 CIV. 3734 (JCF), 2009 WL 4794247, at *3 (S.D.N.Y. Dec. 10, 2009) (finding that plaintiffs showed good cause for their delay and proceeding to analyze the proposed amendment under

Rules 15 and 21); *see also Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (listing cases noting the "obvious tension" between the standards of Rules 15(a) and 16(b).

Nevertheless, even if a court finds good cause for plaintiff's delay, it may still deny a motion to amend a complaint on the basis of prejudice to the defendant or futility. Assuming the original complaint was filed within the statute of limitations, a court must deny as futile any claims that would be otherwise barred by the statute of limitations, unless the claims "relate back" to the date on which the original complaint was filed. *See Slayton v. Am. Express Co.,* 460 F.3d 215, 227-28 (2d Cir.2006). A proposed amendment is also deemed futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

### B. <u>Discovery</u>

Federal district courts have broad discretion in deciding motions to compel. *See Grand Cent. P'ship. Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). Federal Rule of Civil Procedure 26 requires that the parties to a civil action provide a copy, or description by category and location, of all documents (among other things) that the "disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Though the burden of demonstrating relevance is on the party seeking discovery, *see, e.g., Mandell v. Maxon Co.,* No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007), a party seeking to file a motion to compel after discovery has closed must establish good cause. *See, e.g., Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139-40 (S.D.N.Y. 2011); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ) (KNF), 2008 WL 4104015, at *3 (S.D.N.Y. Aug. 28, 2008). If a party objects to discovery requests, that party bears the burden of

showing why discovery should be denied.  *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87-88 (S.D.N.Y. 2016).

## III.  Discussion

### A.  Motion to Amend the Complaint

#### i.    Plaintiffs Have Shown "Good Cause" For Their Delay

Plaintiffs argue that they have satisfied the "good cause" requirement of Rule 16 because they were diligent in bringing the motion to amend to name LaBarca as a defendant upon receiving sufficient information to support their claims, despite filing the motion after the deadline set in the Dec. 28 Discovery Order. [10]   Memorandum of Law in Support of Plaintiffs' Motion to Amend Complaint ("Pl. Amend Memo") (Doc. 65) at 11.  The Scheduling Order directed the parties to file any amendments to the pleadings by January 10, 2015.  After numerous extensions, the Court ordered that April 11, 2016 was the last day of the discovery, though discovery issues are still outstanding.  Plaintiffs filed the instant action on May 27, 2016.

Generally, a "finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (noting that "in certain cases the court may determine that the deadline cannot reasonably be met despite the diligence of the party seeking the extension") (internal quotation marks omitted); *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & New Jersey*, No. 15 Civ. 3526 (AJN), 2016 WL 6083956, at *3 (S.D.N.Y. Oct. 17, 2016) ("Specifically, the movant must show that the deadlines

---

[10] The "good cause" analysis does not apply to Plaintiffs' motion to supplement the Complaint to name Phase NY as a defendant pursuant to Federal Rule of Civil Procedure 15(d).  *See Beckett v. Inc. Vill. of Freeport*, No. 11 Civ. 2163 (LDW) (AKT), 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014) ("[A] party seeking to supplement pleadings under Rule 15(d) is not required to demonstrate "good cause" under Rule 16(b)(4) since this latter provision pertains solely to motions to amend—not motions to supplement pleadings.").

cannot be reasonably met despite its diligence.")  (internal quotation marks omitted).  "[T]he court may deny leave to amend where the party seeking it knew or should have known the facts sought to be added to the complaint."  *Cummins, Inc. v. N.Y. Life Ins.*, No. 10 Civ. 9252 (TPG), 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012).   Where delayed discovery prevented a party from discovering facts sufficient to support a cause of action, a party must show that it acted diligently upon learning the new facts.  *See e.g.*, *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (noting that delayed discovery and settlement negotiations deferred plaintiff's ability to discover facts and holding that plaintiff acted diligently by seeking leave to file an amended complaint only two months after acquiring information).  While the diligence inquiry is the primary consideration, courts may also consider other relevant factors including whether the proposed amendment would result in prejudice to defendants.  *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *see also Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (citing *Kassner*, 496 F.3d at 244).

Defendants claim that Plaintiffs were not diligent because they learned about LaBarca's potential "corporate abuses" after Plaintiffs' May 2015 inspection of the documents at the warehouse and after LaBarca's deposition in October 2015.  Plaintiffs filed the instant motion, at the very least, seven months after this discovery.  Memorandum of Law in Opposition to Plaintiffs' Motion to Amend Complaint ("Def. Opp.") (Doc. 66), at 12.  Plaintiffs claim, however, that they did not have sufficient evidence to state a claim against LaBarca until after they received tax returns in February 2016 and concluded the depositions of LaBarca-Burton and Dima in March 2016.  Pl. Amend Memo at 11.

The Court agrees with Plaintiffs.  Though Plaintiffs do acknowledge that they introduced LaBarca's potential liability at the December 9, 2015 status conference, they are correct in noting that an attempt to assert claims against LaBarca would have been premature at that time. [11] Plaintiffs' Reply Memorandum of Law in Further Support of Motion to Amend Complaint ("Pl. Amend Reply") (Doc. 71) at 3.  The basis for Plaintiffs' claim was LaBarca's testimony about borrowing funds from Defendants, however, he also claimed that only Dima would know if he had paid any of the loans back.  *See, e.g.*, *Enzymotec*, 754 F. Supp. 2d at 537 (noting that plaintiff "may have suspected" that defendant breached an agreement, but finding that plaintiff acted properly by waiting until its cause of action was "based on factual allegations, not factual speculation").  Thus, it was proper for Plaintiffs to wait until after Dima's deposition to seek leave to amend.

Further, the Court notes the numerous discovery disputes that contributed to the significant delays in document productions and depositions.  As a consequence, the depositions of LaBarca-Burton and Dima were conducted in March 2016 – over eight months after the original discovery deadline of July 19, 2015 and less than two weeks shy of the extended discovery deadline of April 11, 2016.  Plaintiffs claim that at Dima's deposition, they learned that LaBarca "took hundreds of thousands of dollars from his companies," had "no loan agreements, paid no interest and had no business records that demonstrated if, how and when he paid back the so-called loans."  Pl. Amend Memo. at 11-12.  On April 14, 2016, only two weeks after Dima's deposition, Plaintiffs informed the Court of their intention to seek leave to amend

---

[11] In response to Plaintiffs assertion of a possible theory of liability against LaBarca, Defendants explained that Plaintiffs were relying on only two documents suggesting that "two very small" loans were made to LaBarca. Transcript of Dec. 9, 2015 Status Conference 15:15-16:8.  Defendants also claimed that there was an actual accounting record of this loan and insisted that LaBarca did not serve as the "alter ego" of Defendants.  *Id.*

the Complaint to name LaBarca as a defendant.  *Id.* at 12.  Accordingly, the Court finds that Plaintiffs were diligent in seeking leave.  *See, e.g.*, *Permatex, Inc. v. Loctite Corp.*, No. 03 Civ. 943, 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (holding that plaintiff exhibited diligence by moving to amend less than two months after deposition that brought new information to light).

Plaintiffs also seek to add new claims for injunctive relief against Defendants and LaBarca to, among other things, enjoin LaBarca from disposing of personal assets purchased using corporate funds and enjoin Defendants from using corporate funds for LaBarca's personal expenditures.  *See* Amended Complaint at 42-45.  Because the deadline to add claims has also passed, these claims must also be reviewed under the Rule 16 "good cause" standard.  As was true of the proposed amendments to add LaBarca and Phase NY as defendants, the information that forms the basis of Plaintiffs' additional claims against LaBarca is derived from the March 2016 depositions.  Accordingly, given that the Court finds that Plaintiffs diligently sought leave to amend to name LaBarca as a defendant, Plaintiffs have also shown good cause to amend the Complaint to add these additional claims.  *See Tardif v. City of N.Y.*, No. 13 Civ. 4056 (KMW) (FM), 2015 WL 9257069, at *6 (S.D.N.Y. Dec. 7, 2015), *aff'd*, 2016 WL 2343861 (S.D.N.Y. May 3, 2016) (applying Rule 16 good cause standard to addition of new claims and finding that because plaintiff did not meet good cause standard for adding defendants, plaintiff did not satisfy good cause standard for adding accompanying new claims).

### ii.    Plaintiffs' Amendment Does Not Unduly Prejudice Defendants

Where, as here, a plaintiff has met the "good cause" standard by being diligent, courts may still deny leave to amend the complaint if the amendment results in undue prejudice or is

futile.  *See e.g.*, *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y.

2012) ("leave to amend may be denied when granting leave would be prejudicial or would be

futile because the amended complaint would not survive a motion to dismiss"); *see also Kassner*,

496 F.3d at 244 (noting that in addition to diligence, a court may also consider "whether

allowing the amendment of the pleading at this stage of the litigation will prejudice defendants").

Similarly, when determining whether to grant a motion to supplement a pleading pursuant to

Rule 15(d), courts should contemplate prejudice to the opposing party and, in their discretion

grant "supplementation where it will promote the economic and speedy disposition of the

controversy between the parties, will not cause undue delay or trial inconvenience, and will not

prejudice the rights of any other party."  *See Andino v. Fischer*, 698 F. Supp. 2d 362, 373

(S.D.N.Y. 2010) (internal quotation marks omitted).

     In determining what constitutes "prejudice," courts consider whether the assertion of the

new claim would, among other things, require defendant to expend significant additional

resources to conduct discovery and prepare for trial or significantly delay the resolution of the

dispute.  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir.

2010) (citing *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993)).  Here,

Defendants claim that an amendment would impose on them significant discovery burdens,

including searching for more written discovery, re-deposing witnesses, and submitting

dispositive motions.  Defs. Amend Opp. at 24.  Defendants also claim that reviewing and

producing documents relevant to LaBarca and Phase NY will be expensive and once again claim

that Plaintiffs had access to these documents in May 2015.  *Id.* at 28.

     Relying on *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (JES), 2008 WL

2795141, at *3 (S.D.N.Y. July 18, 2008) ("*AIG*"), Defendants also claim that they did not

16

receive "fair notice" of the claims asserted against LaBarca because the claims against him are

"unique" in that they arise from "an entirely new set of operative facts." Defs. Amend Memo at

25-26. Specifically, Defendants argue that Plaintiffs' claims against SL and Phase derive from

alleged violations of ERISA and that Plaintiffs' corporate veil piercing theory of liability against

LaBarca is distinct and not consistent with those claims. Lastly, Defendants highlight the history

of extensions and delay in discovery in this action and argue that additional delays would also

prejudice Defendants. *Id.* at 24-25.

The Court finds Defendants' arguments unpersuasive. [12] As Plaintiffs note, the requests

---

[12] Though Plaintiffs assert that the amendment to include LaBarca as a defendant "relates back" to the Complaint, as required by Federal Rule of Civil Procedure 15(c)(1), Defendants do not explicitly address relation back. Instead, Defendants argue that they would be prejudiced because Plaintiffs' claims against LaBarca, (1) do not arise from the same "incident," and (2) that Defendants did not have fair notice of the potential claims against LaBarca. These claims, however, arguably address two of the elements of the relation back doctrine. Accordingly, the Court will briefly discuss its application.

Generally, if a "complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001). Under Federal Rule of Civil Procedure 15(c)(1)(C), an amendment to add an additional party relates back to the date of the original complaint if three conditions are satisfied: (1) the amendment asserts a claim arising from the "conduct, transaction or occurrence" in the original pleading; (2) the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits;" and (3) the party to be added "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(B-C).

Importantly, claims against any newly added defendants will not "relate back" to the date of the original complaint where the plaintiff's failure to name the prospective defendant was "the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity." *See Krupski,* 560 U.S. at 541. Where a plaintiff is aware of the alleged misconduct of a certain individual, and where a plaintiff "was not required to sue them," plaintiff's failure to do so in the original complaint, "in light of [its] obvious knowledge" must be considered a matter of choice and not a mistake. *See Schoolcraft v. City of N.Y.*, 81 F. Supp. 3d 295, 301 (S.D.N.Y. 2015) (quoting *Cornwell v. Robinson,* 23 F.3d 694, 705 (2d Cir. 1994)); *see also Barrow v. Wethersfield Police Dep't.,* 66 F.3d 466, 470 (2d Cir. 1996) ("the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake"); *Abdell v. City of New York,* 05 Civ. 8453, 2006 WL 2620927, at *7 (S.D.N.Y. Sept. 12, 2012) ("Where a plaintiff fails to timely sue a potentially liable party despite incriminating disclosures made within the statute of limitations, the Court cannot find that a mistake was made for relation back purposes.").

Though Plaintiffs were not required to add LaBarca as a defendant, as the Court previously discussed, Plaintiffs were not sufficiently apprised of LaBarca's alleged misconduct until after Dima's deposition in March 2016. Given

for relevant documents concerning LaBarca were already covered in the Dec. 28 Order.[13]

Moreover, since Defendants have consistently represented that no further documents exist and

that they are in complete compliance with the Court's order, Defendants will not need to conduct

additional document searches with regard to LaBarca.  Defendants' claim that they would have

to "re-depose witnesses" is weakened by the fact that they did not attend Dima's deposition nor

did they pose any questions to LaBarca-Burton during her deposition.  Lastly, it is doubtful that

any discovery relating to Phase NY will pose a significant burden, given that Phase NY had been

in operation for approximately eight months at the time the instant motion was filed.

Defendants' reliance on *AIG* is also unavailing.  *AIG* involved a securities class action in

which the lead plaintiff sought to amend the complaint (for a third time) to include claims

concerning different time periods, different divisions of the company, different management,

different alleged objectives, different disclosures, and different shareholders."  2008 WL

2795141 at *2.  The lead plaintiff knew the basis for the proposed amendment before they filed

their motion for class certification and stipulated to a scheduling order.  *Id.*  Defendants there

---

that Plaintiffs named not only SL, the corporation with which it directly contracted, but also Phase through a theory of common ownership and control, it is clear that Plaintiffs would have named LaBarca as a defendant had they known about his alleged misconduct at the time the Complaint was filed.

Notably, Plaintiffs' proposed claims against LaBarca are not barred by the applicable statute of limitations. Plaintiffs simply claim that the amendment relates back in order to recover for contributions owed in 2008 and 2009, which would be barred by the six-year statute of limitations if the Amended Complaint, filed in May 2016, did not relate back.  Further, Plaintiffs' proposed claims against Phase NY are not subject to Rule 15(c).  *See* Fed. R. Civ. P. 15(d) (allowing courts to grant motions for supplemental pleadings upon reasonable notice).

[13] Specifically, the Dec. 28 Order directs Defendants to produce, among other things, "[a]ll documents concerning any form of compensation, loan, lease, financial transaction or transfer of assets:  a) from Phase to any owner, officer, manager, stockholder or member of the Board of Directors of Phase; b) from Phase to any owner, officer, manager, stockholder or member of the Board of Directors of SL; c) from SL to any owner, officer, manager, stockholder or member of the Board of Directors of SL; and d) from SL to any owner, officer, manager, stockholder or member of the Board of Directors of Phase."  *See* Dec. 28 Order Request No. I.A.4.  Plaintiffs also cite to numerous other provisions requiring Defendants to produce documents relevant to LaBarca.  *See* Pl. Amend Memo at 15 (Request Nos. I.A.1, 2, 3, 4, 5, 6. 7 and II.A.1, & 2).

argued that the amendment would impose new discovery burdens and expand the class period by more three years. *Id.* The amendment also concerned "an entirely new set of documents and custodians." *Id.* Consequently, the court denied plaintiff's leave to amend and noted that defendants would have to redo the work they had done to prepare to oppose the motion for class certification; the class certification process would have to restart and the hundreds of depositions that had already been scheduled would have to be put on hold or rescheduled. *Id.* at *3 n.3. The court also found that because the amendment concerned a new set of facts, the original complaint had not afforded defendants fair notice. *Id.* at *3.

It is clear that the same concerns do not apply here. This is not a securities class action involving numerous parties and hundreds of depositions. This is Plaintiffs' first attempt at amending the Complaint. Plaintiffs were not aware of LaBarca's alleged conduct before the scheduling order was filed and no leave has been sought to file dispositive motions. The proposed amendment arises from the conduct at issue in the Complaint and does not expand the time frame asserted in the Complaint. Though it is true that the theory of corporate veil piercing is not explicitly asserted in the Complaint, Defendants' characterization of this case as simply a breach of contract or an ERISA violation is misleading. The basis for Plaintiffs' claims against Phase hinges on whether SL and Phase are severally and jointly liable pursuant to an alter ego and/or single employer theory of liability. Thus, the crux of this case is in determining, what entity, (if any) would be liable to Plaintiffs as the employer. LaBarca, as president and CEO of both corporations (which Plaintiffs use to support their theory of alter ego and single employer

liability), had ample notice of Plaintiffs' theories for recovery and his potential role in the litigation.[14]

Accordingly, the Court finds that Defendants have not sufficiently shown that they would be prejudiced by Plaintiffs' amendment.

### iii.   Plaintiffs' Amendment is Not Futile

As with amendments under Rule 15, courts may deny joinder of parties pursuant to Rule 21 upon a showing of undue delay, bad faith, prejudice, or futility.  Joinder may be denied as futile if the proposed pleading would not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Hernandez v. Habana Room, Inc.*, No. 11 Civ. 1264 (RMB) (JCF), 2012 WL 423355, at *2 (S.D.N.Y. Feb. 9, 2012) (citing *Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir. 2003)).  To survive a motion to dismiss, a plaintiff must allege sufficient facts to suggest the elements of a claim.  *See Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)).  Here, Plaintiffs seek to impose liability on LaBarca by "piercing the corporate veil" and on Phase NY using the "single employer" doctrine.

As an initial matter, Plaintiffs claim that their motion to amend to join LaBarca and Phase NY as defendants should be granted because joinder would be appropriate here.  Pl. Amend Memo at 18.  Pursuant to Rule 20, LaBarca and Phase NY may be joined as defendants if the claims against them arise "out of the same transaction, occurrence or series of transactions or

---

[14] Moreover, Defendants were alerted to Plaintiffs' possible theory of liability as early as the December 2015 status conference.  Yet, Defendants did not participate in the March depositions, even though they knew that Plaintiffs would inquire of Dima whether LaBarca had repaid loans taken from Defendants.

occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  As previously noted, there is no question that the claims that LaBarca and Phase NY are potentially liable for breach of the trust agreement and failure to compensate workers arise out of the same transaction or occurrence.  As Plaintiffs correctly note, the "issues of the laborers' hours worked and their coverage under the Union Agreement are common to all defendants."  Pl. Amend Memo at 19.

To pierce the corporate veil, Plaintiffs must establish "(i) that the owner exercised complete dominion over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."[15]  *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997); *see also Lin v. Toyo Food, Inc.*, No. 12 Civ. 7392 (KMK), 2016 WL 4502040, at *5 (S.D.N.Y. Aug. 26, 2016).  Similarly, to state a claim under the single employer theory of liability, Plaintiffs must allege sufficient facts to show, among other things, an "interrelationship of operations, common management, centralized control of labor relations and common ownership," as well as "the use of common office facilities and equipment and family connections between or among the various enterprises."  *Lihli Fashions Corp. Inc. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996) (citing *Radio & Television Broadcast Tech. Local Union 1264 v. Broadcast Serv. of Mobile, Inc.,* 380 U.S. 255, 256 (1965) (per curiam).

---

[15] Though Plaintiffs note that the alter ego theory can be applied broadly and flexibly in the ERISA context, Plaintiffs apply New York law to argue that they have alleged sufficient facts to pierce the corporate veil and state a claim against LaBarca.  Defendants do not contest Plaintiffs' use of New York law.  The Court finds that Plaintiffs' application is appropriate here.  *See e.g.*, *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) ("The test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case, while recognizing that the following factors are important:  whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.") (internal quotation marks omitted).

Defendants claim that the Court should deny Plaintiffs' motion to amend because their allegations against LaBarca and Phase NY do not state a claim upon which relief can be granted. Specifically, Defendants argue that Plaintiffs have not sufficiently alleged a veil piercing claim against LaBarca because Plaintiffs' reliance on Dima's deposition is misplaced, in that Dima testified that she did not observe LaBarca engaging in any illegitimate or illegal practices.  Defs. Amend. Opp. at 20-21.  Defendants further contend that Plaintiffs' allegations regarding alter ego and single employer liability against Phase NY are conclusory and self-serving and contradict the available facts.  *Id*. at 14, 16.  Defendants add that Phase NY is operated and managed by a completely separate team, employs different people, and works on different construction jobs.  *Id*.

Defendants' arguments are inappropriate at this stage.  At the motion to dismiss stage, Plaintiffs must simply allege sufficient facts – not affirmatively prove facts through discovery – to state a claim upon which relief may be granted.  Here, Plaintiffs have alleged that (1) LaBarca had complete and unfettered control over the finances and operations of Defendants and Phase NY and as such determined which creditors to pay and when; and (2) LaBarca borrowed significant sums of money from Defendants for his personal use that he did not pay back or pay interest on.  The Court finds that these allegations are sufficient to state a claim for corporate veil piercing against LaBarca.  With respect to Phase NY, Plaintiffs allege that LaBarca created Phase NY in November 2015 to evade and avoid the obligations of SL and Phase.  Specifically, Plaintiffs claim that Phase NY has been doing the same type of construction work performed by Defendants for Defendants' former customers.  Plaintiffs further allege that LaBarca's treatment of Defendants as non-distinct entities "blur[s] the corporate lines among all three entities."

22

Amended Complaint at 8-10.  The Court finds that these allegations are also sufficient to state a claim against Phase NY pursuant to a single employer theory of liability.

Accordingly, Plaintiffs' motion to amend the Complaint is GRANTED.

### B. <u>Motion to Compel Discovery</u>

Plaintiffs argue that Defendants have failed to produce relevant documents for the period after December 31, 2013 – the last day of the previous audit period – and have not provided an adequate explanation for their noncompliance.  Pl. Compel Memo at 16.  Defendants disagree and claim that their previous document productions sufficiently comply with the Court's discovery orders and that LaBarca's affidavit adequately explains that no other responsive documents exist.[16]  Memorandum of Law in Opposition ("Def. Compel Opp.") (Doc. 75) at 8-9.

Generally, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one "cannot be required to produce the impossible."  *Menard v. Chrysler Grp. LLC*, No. 14 Civ.

---

[16] Defendants also claim that Plaintiffs' motion to compel should be denied because Plaintiffs did not fulfill the "meet-and-confer" requirement prior to filing their motion.  Def. Compel Memo at 12.  Under Rule 37, a motion to compel must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). However, courts have excused the meet-and-confer requirement "where temporal exigencies required speedy action and where efforts at informal compromise would have been clearly futile." *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB) (JCF), 1998 WL 67672, at *3 (S.D.N.Y. Feb. 18, 1998).  Here, it is clear that Plaintiffs attempted, via their May 16, 2016 letter, to schedule a meet and confer with Defendants before filing their motion.  *See* Pl. Compel Memo, Ex. G ("Pursuant to Fed. R. Civ. P. 37(a)(1) . . . [Plaintiffs] are available to discuss with you how Defendants may remedy the [discovery] defects.")  Defendants rejected this invitation, explicitly replying that "meeting and conferring . . . would not be productive."  Considering Defendants outright refusal to meet and confer, and the extensive discovery disputes in this matter, the Court finds that any additional efforts by Plaintiffs to reach a compromise would have been futile and, as such, deems Plaintiffs' meet-and-confer requirement satisfied.

6325 (VB), 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015) (quoting *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)).  "In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion."  *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n. 7 (S.D.N.Y. 1992).  In other words, Plaintiffs must cite to specific evidence to challenge Defendants' assertions that no additional responsive documents exist.  *See e.g.*, *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514 (PAC) (HBP), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) (noting that moving party did "not cite any specific evidence impugning [the non-movant's] assertions that their production [was] complete" and thus court could not find basis for misconduct); *Jackson v. Edwards*, No. 99 Civ. 0982 (JSR) (HBP), 2000 WL 782947, at *3-4 (S.D.N.Y. June 16, 2000) ("Since plaintiff has offered nothing to show that [defendant's claims that he has no responsive documents] are untrue, [plaintiff's] motion to compel a further response to these requests is denied.").

Here, Plaintiffs have identified specific evidence to call into question Defendants' contention that no further responsive documents exist.  Plaintiffs first point to LaBarca's deposition in which he claimed that documents may exist at locations other than the warehouse, including the 39th Street office.  However, LaBarca's affidavit does not address whether any other locations were in fact searched.  Though Defendants claim that the 39th Street office was closed in October 2015, Defendants have made no representations regarding whether the documents that were moved from the 39th Street office to the warehouse in Deer Park were relevant and had been produced to Plaintiffs.  Moreover, the tax returns, showing that SL and Phase indeed continued to generate profit after 2013, further challenge Defendants' claims that no records exist of financial transactions or operations for 2014 and 2015.  Plaintiffs' belief that

documents relating to the projects from which SL and Phase profited (according to the tax returns) is thus, not misplaced or farfetched. Nevertheless, Defendants are correct in claiming that the existence of the tax returns does not mean that additional documents *must* exist. Def. Compel Memo at 7. However, because Plaintiffs have cited to specific evidence that challenges Defendants' blanket assertion that no additional documents exist, the burden now shifts to Defendants to show *specifically* where they have searched and why these documents are not, in fact, within their custody, possession, or control.

Accordingly, Plaintiffs' motion to compel discovery is GRANTED. Defendants are therefore directed to produce all relevant documents post-December 2013, or in the alternative, explain specifically what efforts were undertaken to find relevant documents and why relevant documents do not exist, if in fact, that is the case.

If a court grants a motion to compel, it must, after giving an opportunity to be heard, impose the moving party's reasonable expenses incurred in making the motion on the party who created the need for the motion, unless the nondisclosure was "substantially justified" or other circumstances make such an award unjust. Fed. R. Civ. P. 37(a)(5)(A); *see also Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013). To determine whether a party's nondisclosure was justified, courts use "an objective standard of reasonableness," which does not require that the non-disclosing party have acted in good faith. *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Here, the Court has extended multiple discovery deadlines, settled several discovery disputes, and ordered Defendants to comply with discovery orders on numerous occasions. *See*

*e.g.*, Docs. 21, 22, 27, 36, 40, 49.  Plaintiffs have also made repeated requests for discovery, which Defendants' have disregarded.  As Defendants acknowledge, Plaintiffs' discovery requests are not new, yet, Defendants have continued to refuse to address LaBarca's testimony regarding the existence of additional relevant documents and to explain the profits listed in the tax returns dated 2014 and 2015, in light of the representation that no records exist of financial transactions or operations for 2014 and 2015.  Though Defendants have repeatedly claimed that all responsive documents were made available to Bond when he inspected the warehouse in May 2015, Defendants have not addressed the fact that documents dated June 2015 and later (and any documents related to Phase NY) *could not* have existed in the warehouse at the time.  The Court finds that Plaintiffs' counsel made a good faith effort to obtain such information prior to filing the motion to compel and that Defendants' objections – which the Court has previously denied – and their nondisclosure is not justified.  Accordingly, Plaintiffs' motion for attorneys' fees and costs is GRANTED.

The Court finds that no further sanctions are appropriate at this time.

**IV. <u>Conclusion</u>**

For the reasons set forth above, Plaintiff's motion to amend is GRANTED and Plaintiffs' motion to compel discovery is GRANTED.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 64, 73.


It is SO ORDERED.


Dated:     November 30, 2016
           New York, New York

                                                  _____
                                                  Edgardo Ramos, U.S.D.J.

27